IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

JASON WILLIAMS, also known as
LAEL FELLS,

      Petitioner,

                                Civil Action No.
      v.                      9:02-CV-0695 (DNH/DEP)

JOHN W. BURGE, Superintendent,

      Respondent.

_____

APPEARANCES:          _____OF COUNSEL:

FOR PETITIONER:

JASON WILLIAMS
also known as LAEL FELLS
Petitioner, *pro se*

FOR RESPONDENT:

HON. ELIOT SPITZER          GERALD J. ROCK, ESQ.
Office of Attorney General      Assistant Attorney General
New York State Attorney General
The Capitol
Albany, NY 12224

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

REPORT-RECOMMENDATION AND ORDER

Petitioner Jason Williams, a New York State prison inmate as a

result of convictions in 1997 of criminal possession of a controlled substance in the second and third degrees, has commenced this proceeding seeking habeas relief pursuant to 28 U.S.C. § 2254.[1]  In support of his request for federal habeas intervention, petitioner asserts several different grounds, the majority of which were presented to and rejected by the state courts on direct appeal of his conviction.

Having carefully reviewed the record in light of petitioner's claims, I find that Williams is procedurally barred from obtaining habeas relief as to the unexhausted claims he asserts in one ground of his amended habeas petition.  Addressing the merits of his petition, in light of the requisite deferential standard, I recommend that the remaining claims raised by Williams in this proceeding be denied.

I.   BACKGROUND

According to the testimony adduced at trial, in May, 1995, Nicola Messere, an officer of the Schenectady Police Department, was directed to respond to a complaint of an assault that had recently occurred at the residence of Jimmy Harris on Albany Street, in the City of Schenectady,

_____

[1]   While petitioner was prosecuted in the State courts as Lael Fells, for sake of consistency, I will refer to the petitioner in this report as "Jason Williams," the name chosen by him when he commenced this proceeding.

2

New York.  *See* Transcript of Trial of Lael Fells (7/17/96) ("Trial Tr.") at

619.  Upon investigation of the complaint, Officer Messere confirmed that

the apartment at which the assault had occurred was Harris' home, but

determined that he was not criminally involved in that incident.  *Id.*

At approximately 9:00 a.m. on June 24, 1995, Officer Messere

observed a black male standing on the porch of Harris' residence.  Trial

Tr. at 622.  Believing that the residence was being used to facilitate the

selling of illegal narcotics, Officer Messere summoned the individual,

motioning for him to come to the patrol car.  *Id.*  Instead of complying with

the officer's request, the man opened the door to the residence and ran

inside.  Trial Tr. at 622, 624.

Officer Messere then proceeded onto the porch of Harris' home,

knocked on its front door with his flashlight, and asked Harris, who had

answered the door, "what happened to the kid that ran inside?"  Trial Tr.

at 624.  When Harris indicated that the individual had gone into the back

bedroom of the home, Officer Messere asked Harris whether he would

admit the officer into the residence to speak with the individual.  *Id.*  Harris

responded "go ahead," at which point Officer Messere entered the home

and attempted to locate the man who had recently entered the apartment.

3

*Id.*  As Officer Messere approached the back bedroom of the residence, through the doorway of that room he observed five males, one of which, it was later determined, was Williams, lying on the floor, as well as a plastic bag which contained what appeared to Officer Messere to be cocaine. Trial Tr. at 625-27.  The officer immediately called for back up assistance, and informed the individuals who were lying on the floor to remain in that position.  Trial Tr. at 627-28.

After additional officers arrived at the scene, the police began removing the five occupants from the bedroom.  Trial Tr. at 629.  As one of the men was being lifted from his position, Officer Messere observed a second plastic bag, containing what appeared to him to be cocaine, lying on the floor.[2]  Trial Tr. at 629.  All of the men who had been in the bedroom, including the petitioner, were then handcuffed, placed under arrest, and taken into custody for the criminal possession of cocaine. Trial Tr. at 629-33, 645.  The two plastic bags and their contents, as well as approximately $300.00 in cash which was also recovered from the

_____

[2]      Subsequent chemical testing of the substances seized from Harris' residence established that the bags contained cocaine with an aggregate weight of approximately eighty-eight grams.  *See* State Court Record ("Record") at SR1591.

4

room, were thereafter secured by Officer Messere as evidence.[3]  Trial Tr. at 628, 632-33.

II.   PROCEDURAL HISTORY

    A.   State Court Proceedings

A Schenectady County grand jury indicted Williams and other individuals on August 10, 1995, charging them with the crimes of criminal possession of a controlled substance in the second degree, in violation of N.Y. Penal L. § 220.18(1), and criminal possession of a controlled substance in the third degree, in violation of N.Y. Penal L. § 220.16(1). *See* Indictment No. 595-21 (Record at SR1592-93).

On October 13, 1995 the petitioner, through counsel, filed a pretrial motion seeking various, omnibus relief including, *inter alia*, 1) dismissal of the indictment due to the fact that Williams was forced to wear clothing issued by the Schenectady County Jail while testifying before the grand jury that subsequently indicted him; and 2) suppression of all evidence obtained by law enforcement agents on June 24, 1995.  *See* Record at

---

[3]   At the time of Williams' trial, Officer Messere had participated in approximately 2,000 narcotics-based arrests.  Trial Tr. at 635.  Officer Messere testified that based upon his experience relating to the illegal sale of narcotics, the cocaine in the bags seized from Harris' residence appeared to have been packaged for resale.  Trial Tr. at 635-43.

5

SR1386-92.  By decision and order dated November 7, 1995,

Schenectady County Court Judge Michael C. Eidens denied the portion of

Williams' omnibus motion seeking dismissal of the indictment, concluding

in that decision that Williams' right to testify before the grand jury under

New York's Criminal Procedure Law ("CPL") was not violated "by [his]

being required to wear the uniform provided by the jail."  *See People v.*

*Fells*, No. 595-21 (Schenectady Cty. Ct. Nov. 7, 1995) (Record at

SR1597-99).  A *Mapp* hearing was later conducted on November 21,

1995 by Schenectady County Court Judge Jerry J. Scarano, Jr. to

address the request for suppression of the physical evidence seized from

Harris' apartment on the day of Williams' arrest.[4]  By decision and order

dated December 1, 1995, Judge Scarano thereafter denied Williams'

suppression application in all respects.  *See People v. Fells*, No. 595-21

(Schenectady Cty. Ct. Dec. 1, 1995) (Record at SR1382-84).

Williams was ultimately tried in connection with the foregoing

charges before a jury in Schenectady County Court, beginning on July 17,

---

[4]       *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684 (1961).  A *Mapp* hearing
is held "to determine whether physical evidence sought to be used against a
criminal defendant was obtained illegally by law enforcement officers and, thus, is
inadmissible at the criminal defendant's trial."  *Montalvo v. Newton*,  No. 98 CIV.
8665, 2001 WL 1399527, at *3 n.2 (S.D.N.Y. Mar. 23, 2001).

1996, with Acting Schenectady County Court Judge Guy P. Tomlinson

presiding.  At the conclusion of that trial, Williams was found guilty on

both counts.  Trial Tr. at 1025-28.  As a result of the jury's verdict, on

March 17, 1997, petitioner was sentenced by Judge Tomlinson as a

second felony offender to a term of imprisonment of between ten years

and life on the second degree criminal possession of a controlled

substance conviction, and a lesser, concurrent sentence on his conviction

of third degree criminal possession of a controlled substance.  Record at

SR1565-66.

Williams appealed his conviction and sentence to the New York

State Supreme Court, Appellate Division, Third Department.  With the

assistance of counsel, Williams argued in his appeal that 1) his

constitutional rights were violated when he was forced to testify before the

grand jury in prison attire; 2) Officer Messere's pursuit of the man he

observed on Harris' porch into that home was not supported by

reasonable suspicion and, accordingly, the drugs found in that residence

should have been suppressed; 3) the prosecution's failure to disclose the

fact that an indictment had been returned against one of its trial witnesses

7

violated Williams' right to all *Brady* material;[5] 4) the trial court erred in

failing to provide an accomplice charge to the jury; and 5) his attorney's

failure to request an accomplice charge deprived him of effective

assistance of trial counsel.  *See* Brief in Support of Appeal (5/10/00)

("App. Br.") at 13-42.  The Third Department issued a decision on January

11, 2001, rejecting each of petitioner's contentions, and affirming his

conviction and sentence.  *See People v. Fells*, 279 A.D.2d 706, 718

N.Y.S.2d 458 (3d Dept. 2001).  On February 27, 2001, the Court of

Appeals denied Williams leave to appeal the Appellate Division's

decision.  *People v. Fells*, 96 N.Y.2d 758, 748 N.E.2d 1080, 725 N.Y.S.2d

284 (2001).

On or about October 10, 2003, also with the assistance of counsel,

Williams filed a motion to vacate his judgment of conviction, pursuant to

section 440.10 of the CPL ("October, 2003 CPL Motion").  In that

application Williams alleged, *inter alia*, that Harris had committed perjury

at Williams' trial and that the prosecution's knowing use of that testimony,

coupled with the evidence of official misconduct on the part of Officer

Messere, necessitated a new trial.  *See* Affirmation in Support of October,

---

[5]     *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963).

2003 CPL Motion ("Supporting Affirmation") ¶ 31.   By decision and order

dated December 5, 2003, Judge Eidens denied Williams' CPL Motion.

*See People v. Fells*, No. 595-21 (Schenectady Cty. Ct. Dec. 5, 2003)

("December, 2003 Order").  Leave to appeal that decision was denied by

the Third Department on February 3, 2004.  *See People v. Fells*, No.

15127 (3d Dept. Feb. 3, 2004).

    B.    <u>This Proceeding</u>

    Williams commenced this matter on May 23, 2002.  Petition (Dkt.

No. 1) at 1.  In his petition, Williams claims that 1) his constitutional rights

were violated when he was required to testify before the grand jury while

wearing prison-issued clothing; 2) the search of Harris' apartment and

subsequent seizure of drugs from that residence was unconstitutional; 3)

the prosecution's failure to disclose to the defense that Harris, a

prosecution witness at Williams' trial, was the subject of a separate,

sealed indictment constituted a violation of his *Brady* rights;[6] and 4) trial

counsel's failure to request an accomplice charge constituted ineffective

assistance.  *See* Petition (Dkt. No. 1) at Grounds One through Four.

--------

[6]    The indictment returned against Harris charged him with a single count of criminal facilitation in the second degree, based upon events occurring on June 24, 1995.

Petitioner also filed a memorandum of law in support of these claims. Dkt. No. 2 ("Supporting Mem."). In his supporting memorandum, Williams provides legal argument in support of his claims, and also requests that this court expand the record in this proceeding by directing the Schenectady County District Attorney to file with this court a copy of the instructions that office provided to the grand jury which returned the underlying indictment against Williams. *Id.* at 6.

The New York State Attorney General, acting on respondent's behalf, has opposed the granting of Williams' petition by filing an answer and a memorandum of law in opposition to that application, arguing that the claims raised in the petition are without merit. *See* Dkt. Nos. 8, 9. In his reply memorandum, or "traverse," petitioner essentially reiterates the arguments previously asserted in support of his petition. *See* Dkt. No. 13.

On March 2, 2004, Williams filed a motion seeking leave to amend his habeas petition. Dkt. No. 19. After that application was granted, by order dated April 22, 2004, Dkt. No. 24, Williams filed his amended petition on May 20, 2004, reasserting the four grounds raised in his initial petition, and adding a fifth claim for relief, arguing that the prosecution's knowing use of perjured testimony violated his constitutional rights. *See*

10

Amended Petition (Dkt. No. 27) Grounds One through Five.  Williams has

also filed a supplemental memorandum of law in support of his fifth

ground for relief, docketed by the clerk of this court as an exhibit to his

amended habeas petition.  *See* Exh. to Dkt. No. 27 ("Supplemental

Mem.").  The Attorney General filed a response in opposition to that

amended pleading on July 23, 2004, Dkt. No. 30 ("Resp. Mem."), and on

August 17, 2004, Williams filed a supplemental "traverse" in further

support of his request for federal habeas intervention.  Dkt. No. 32

("Supplemental Traverse").

This matter, which is now ripe for determination, has been referred

to me for the issuance of a report and recommendation pursuant to 28

U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule

72.3(c).  *See also* Fed. R. Civ. P. 72(b).

II.   <u>DISCUSSION</u>

A.   <u>Standard of Review</u>

Enactment of the Antiterrorism and Effective Death Penalty Act of

1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), brought

about significant new limitations upon the power of a federal court to grant

habeas relief to a state prisoner under 28 U.S.C. § 2254.  A federal court

11

cannot grant habeas relief to a state prisoner on a claim

> that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > 1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also DeBerry v. Portuondo*, 403 F.3d 57, 66 (2d Cir. 2005); *Miranda v. Bennett*, 322 F.3d 171, 177-78 (2d Cir. 2003); *Boyette v. LeFevre*, 246 F.3d 76, 88 (2d Cir. 2001).  The AEDPA also requires that in any such proceeding "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *see also DeBerry*, 403 F.3d at 66; *Boyette*, 246 F.3d at 88 (quoting § 2254(e)(1)) (internal quotations omitted).

The Second Circuit has provided additional guidance concerning application of this test, noting that

> [u]nder AEDPA, we ask three questions to

12

> determine whether a federal court can grant
> habeas relief: 1) Was the principle of Supreme
> Court case law relied upon in the habeas petition
> "clearly established" when the state court ruled? 2)
> If so, was the state court's decision "contrary to"
> that established Supreme Court precedent? 3) If
> not, did the state court's decision constitute an
> "unreasonable application" of that principle?

*Williams v. Artuz*, 237 F.3d 147, 152 (2d Cir. 2001) (citing *Francis S. v.*
*Stone*, 221 F.3d 100, 108-09 (2d Cir. 2000)).

Because the AEDPA's restriction on federal habeas power is
premised in no small part upon the duty of state courts to uphold the
Constitution and faithfully apply federal laws, the AEDPA's exacting
review standards apply only to federal claims which have been actually
adjudicated on the merits in the state court. *Washington v. Schriver*, 255
F.3d 45, 52-55 (2d Cir. 2001). Accordingly, deference is not mandated
under section 2254(d) if a state court decides the case on a procedural
basis, rather than on the merits. *See Sellan v. Kuhlman*, 261 F.3d 303,
309-10 (2d Cir. 2001).

In *Sellan*, the Second Circuit answered the question of whether
deference under section 2254(d) is mandated if a state court decides a
case without citing to federal law or otherwise making reference to a
federal constitutional claim. Specifically, that court held that deference is

13

required if the federal claim was presented to the state court and there

was an adjudication on the merits, even though the state court's decision

lacks explicit reference to the federal claim or to federal case law.  *Sellan*,

261 F.3d at 311-12.  As the Second Circuit explained, the plain meaning

of § 2254(d)(1) dictates that

> [f]or the purposes of AEDPA deference, a state
> court "adjudicate[s]" a state prisoner's federal
> claim on the merits when it (1) disposes of the
> claim "on the merits," and (2) reduces its
> disposition to judgment.  When a state court does
> so, a federal habeas court must defer in the
> manner prescribed by 28 U.S.C. § 2254(d)(1) to
> the state court's decision on the federal claim –
> *even if the state court does not explicitly refer to
> either the federal claim or to relevant federal case
> law.*"

*Sellan*, 261 F.3d at 312 (emphasis added), *see also Ryan v. Miller*, 303

F.3d 231, 246 (2d Cir. 2002).[7]

   When a state court's decision is found to be decided "on the merits",

that decision is "contrary to" established Supreme Court precedent if it

---

[7]   In his opinion in *Sellan*, Chief Judge Walker acknowledged that
enlightenment in state court decisions as to the manner of disposition of federal
claims presented would greatly enhance a federal court's ability, on petition for
habeas review, to apply the AEDPA's deference standard.  *Sellan*, 261 F.3d at 312.
He noted, however, that a state court's failure to provide such useful guidance does
not obviate a federal court's duty to make the analysis and pay appropriate
deference if the federal claim was adjudicated on the merits, albeit tacitly so.  *Id.*

14

applies a rule that contradicts Supreme Court precedent, or decides a case differently than the Supreme Court on a set of materially indistinguishable facts.  *Williams v. Taylor*, 529 U.S. 362, 405-06, 120 S.Ct. 1495, 1523 (2000).  Moreover, a federal court engaged in habeas review must also determine not whether the state court's determination was merely incorrect or erroneous, but instead whether it was "objectively unreasonable".  *Williams*, 529 U.S. at 409, 120 S.Ct. at 1521; *see also Sellan*, 261 F.3d at 315.  The Second Circuit has noted that this inquiry admits of "[s]ome increment of incorrectness beyond error", though "the increment need not be great[.]"  *Francis S*., 221 F.3d at 111.

     B.    Review of Williams' Claims

        1.   Ground One

In his first ground for relief, Williams claims that his constitutional rights were violated when he was forced to wear prison clothing while testifying before the grand jury which ultimately indicted him.  Amended Petition (Dkt. No. 27) Ground One.  Specifically, petitioner alleges that after informing the District Attorney's office of his intention to testify before the grand jury, he was advised by that office that he would be required to testify "while wearing an 'orange' prison jumpsuit with the logo

'Schenectady County Jail' written on it."  Supporting Mem. (Dkt. No. 2) at

1.  Petitioner claims that because he was thereafter forced to wear such

prison clothing when he testified before that body, "the verdict [must be]

overturned, and the indictment dismissed...."  Supporting Mem. (Dkt. No.

2) at 5.

Unfortunately for petitioner, the courts have not recognized a federal

constitutional right to indictment by a grand jury in a state criminal

prosecution.  *See Smith v. Walsh*, No. 00-CV-5672, 2003 WL 22670885,

at *7 (E.D.N.Y. Oct. 20, 2003); *see also Alexander v. Louisiana*, 405 U.S.

625, 633, 92 S.Ct. 1221, 1226-27 (1972).  Claims based on alleged

defects in grand jury proceedings are therefore not reviewable in a

petition for habeas corpus relief unless they present an independent

federal constitutional claim.[8]  *See Lopez v. Riley*, 865 F.2d 30, 32-33 (2d

Cir. 1989); *Barnes v. Giambruno*, No. 01 CIV. 8965, 2002 WL 850020, at

*7 (S.D.N.Y. May 2, 2002) ("It is clearly established in this Circuit that

[grand jury claims are] not cognizable [under § 2254]") (citing *Lopez*).

_____

[8]     A criminal defendant's right to testify before the grand jury in New
York is statutorily derived.  *See* CPL § 190.50(5)(a) ([a]lthough not called as a
witness by the people or at the instance of the grand jury, a person has a right to be
a witness in a grand jury proceeding ... (a) When a criminal charge against a
person is being or is about to be or has been submitted to a grand jury....")

Even assuming the existence of a federal right to indictment by a grand jury, Williams would nonetheless not be entitled to habeas relief on this claim, since any error in the grand jury proceedings which resulted in the indictment was necessarily cured by his subsequent conviction by a petit jury on the charges contained in that accusatory instrument.  As the Supreme Court has noted, a guilty verdict following a criminal trial necessarily renders any error in underlying grand jury proceedings harmless by establishing "not only that there was probable cause to believe that the defendant[] w[as] guilty as charged, but also that [he or she is] in fact guilty as charged beyond a reasonable doubt."  *See United States v. Mechanik*, 475 U.S. 66, 70, 106 S.Ct. 938, 941-42 (1986); *see also Lopez*, 865 F.2d at 32 (citing *Mechanik*); *Mariani v. Kelly*, No. 97-CV-384 (Dkt. No. 36), 2001 WL 1860961, at *5 (N.D.N.Y. Jan. 17, 2001) (Sharpe, M.J.) (citing *Mechanik* and *Lopez*), *adopted*, *Mariani v. Kelly*, No. 97-CV-384 (Dkt. No. 38) (N.D.N.Y. Sept. 27, 2001) (Scullin, C.J.), *appeal dismissed*, *Mariani v. Kelly*, No. 97-CV-384 (Dkt. No. 45) (2d Cir. Nov. 13, 2001); *Mackenzie v. Portuondo*, 208 F.Supp.2d 302, 313 (E.D.N.Y. 2002) (denying habeas claim that petitioner was both prejudiced and deprived of his right to a fair trial because he was forced to

17

wear prison clothes before grand jury; "[a] petit jury's guilty verdict transforms any defect in the grand jury proceedings into harmless error....") (citing *Mechanik*); *Beverly v. Walker*, 899 F.Supp. 900, 908 (N.D.N.Y. 1995) (Scullin, J.) (citing *Mechanik*), *aff'd*, 118 F.3d 900 (2d Cir.), *cert. denied* 522 U.S. 883, 118 S.Ct. 211 (1997); *Velez v. People of the State of New York*, 941 F.Supp. 300, 316 (E.D.N.Y. 1996).

In light of the foregoing, I recommend that the first ground of Williams' amended petition be denied.[9]

   2.   Ground Two

Petitioner's second ground for relief asserts claims of violation of his constitutional rights, based upon his contention that Officer Messere's pursuit of the individual observed on Harris' porch into that residence "was not supported by the requisite reasonable suspicion," and that the ensuing search and arrest were therefore unlawful.  Amended Petition (Dkt. No. 27) Ground Two.  It therefore follows, petitioner argues, that the ensuing search of Harris' apartment, the seizure of drugs found in that

---

[9]    Based upon my recommendation that this ground be denied, I deny as unnecessary petitioner's request to expand the record in this action by obtaining from the Schenectady County District Attorney a copy of the instructions provided to the grand jury that returned an indictment against Williams.  *See* Supporting Mem. (Dkt. No. 2) at 6.

residence, and his arrest were unlawful.  *Id.*

Williams' claim that the search of Harris' residence and resulting

seizure of drugs in that home were illegal are necessarily rooted in the

Fourth Amendment's prohibition against unreasonable searches and

seizures.[10]  Similarly, it is well-settled that a claim that the police lacked

probable cause to arrest an individual is also based upon the Fourth

Amendment to the United States Constitution.  *See McPherson v.*

*Greiner*, No. 02 CIV. 2726, 2003 WL 22405449, at *16 (S.D.N.Y. Oct. 22,

2003); *Morales v. Walsh*, No. 02-CV-6045, 2003 WL 23185770, at *15

(E.D.N.Y. Oct. 30, 2003); *Montalvo v. Annetts*, No. 02 CIV.1056, 2003 WL

22962504, at *14-16 (S.D.N.Y. Dec. 17, 2003).

In this circuit, the merits of a Fourth Amendment claim asserted by

way of federal habeas petition may only be properly reviewed by a federal

district court where 1) the state has provided no corrective procedures to

redress the alleged Fourth Amendment violations; or 2) the state has

provided a corrective mechanism, but the petitioner was precluded from

availing himself or herself of the procedure due to an unconscionable

---

[10]     The Fourth Amendment provides that "[t]he right of the people to be
secure in their persons, houses, papers, and effects, against unreasonable
searches and seizures, shall not be violated ...."  U.S. Const., amend. IV.

breakdown in the underlying process.  *Capellan v. Riley*, 975 F.2d 67, 70

(2d Cir. 1992*)* (citing *Stone v. Powell*, 428 U.S. 465, 481-82, 96 S.Ct.

3037, 3046 (1976)); *see also Martinez v. Senkowski*, No. 6:97-CV-624,

2000 WL 888031, at *7 (N.D.N.Y. June 28, 2000) (Scullin, C.J.).

Accordingly, in order to establish a legal basis for this court's review of his

Fourth Amendment claims, Williams must demonstrate that he was

precluded from fully and fairly litigating those claims in the state courts.

*Chavis v. Henderson*, 638 F.2d 534, 538 (2d Cir. 1980), *cert. denied*, 454

U.S. 842, 102 S.Ct. 152 (1981); *Devino v. Duncan*, No. 01 CIV 9044,

2004 WL 884961, at *4  (S.D.N.Y. Apr. 23, 2004); *Holmes v. Scully*, 706

F.Supp. 195, 200-01 (E.D.N.Y. 1989) (federal claim premised upon failure

to suppress evidence obtained during alleged unlawful detention of

petitioner prohibited under *Stone*); *Morales v. Walsh*, No. 02-CV-6045,

2003 WL 23185770, at *15 (E.D.N.Y. Oct. 30, 2003) ("*Stone v. Powell*

applies to all Fourth Amendment claims – including claims of arrest

without probable cause – and regardless of the nature of the evidence

that the defendant is seeking to suppress"); *Montalvo*, 2003 WL

22962504, at *16 (citing *Chavis*) (other citations omitted).

Petitioner would be hard-pressed to argue that New York does not

20

provide a means by which he could have sought redress of his Fourth

Amendment claims, given that he in fact availed himself of the prescribed

procedure in the state courts.[11]  Read liberally, however, Williams'

amended petition could conceivably be considered as alleging that an

unconscionable breakdown occurred at the suppression hearing

conducted by the state court, in light of his allegation that he "did not

receive a full and fair hearing on the merits of his Fourth Amendment

claim in the state court."  *See* Supporting Mem. (Dkt. No. 2) at 7.  I will

therefore consider this argument as one which alleges that an

unconscionable breakdown occurred at the suppression hearing.

To establish such a breakdown sufficient to permit habeas review of

a state court's Fourth Amendment ruling, a petitioner must prove that the

state court failed to conduct a reasoned method of inquiry into relevant

questions of fact and law regarding his or her Fourth Amendment claim.

*Taylor*, 36 F. Supp.2d at 549 (internal quotations and citation omitted);

*Stanley v. Kuhlmann*, 10 F.Supp.2d 250, 253 (E.D.N.Y. 1998)

---

[11]     The federal courts in this circuit have expressly approved New York's procedure for litigating Fourth Amendment claims, which is embodied in CPL § 710, as being facially adequate.  *See Hemphill v. Senkowski*, No. 02 CIV. 7093, 2004 WL 943567, at *7 (S.D.N.Y. May 3, 2004) (collecting cases); *Taylor v. Kuhlmann*, 36 F.Supp.2d 534, 549 (E.D.N.Y. 1999) (citing *Gates v. Henderson*, 568 F.2d 830, 837 & n.4 (2d Cir. 1977)) (other citations omitted).

(unconscionable breakdown occurs when state court fails to conduct

reasoned inquiry into petitioner's claim).  In considering this issue, I have

reviewed the testimony and arguments presented at the suppression

hearing, the trial court's ruling following that hearing, and the appellate

court's decision denying this aspect of Williams' appeal.  I find nothing

from that review which suggests that an unconscionable breakdown of the

process developed by New York for resolving claimed violations of Fourth

Amendment rights occurred in the state courts in Williams' case.  To the

contrary, it appears that those courts carefully considered and rejected

petitioner's Fourth Amendment challenges regarding the events of June

24, 1995 including the search of Harris' residence, the seizure of the

drugs at that home, and Williams' arrest.  *See* Record at SR53-129; *see*

*also Fells*, 279 A.D.2d at 709-10, 718 N.Y.S.2d at 462.  I therefore

recommend that Williams' second ground for federal habeas relief, which

is based upon claimed violations of his Fourth Amendment rights, be

denied on this basis.  *See Stone*, 428 U.S. at 481-82, 96 S.Ct. at 3046;

*Capellan*, 975 F.2d at 70; *Martinez*, 2000 WL 888031, at *7.

### 3.   Ground Three

The third ground for relief in Williams' petition is premised upon his

22

assertion that Harris was the subject of a criminal indictment at the time

he testified on behalf of the prosecution at Williams' trial.  Amended

Petition (Dkt. No. 27), Ground Three.  Petitioner claims that the

prosecution's failure to disclose this fact until after the jury's verdict in the

underlying criminal case constituted a violation of his right to all *Brady*

material, thereby entitling him to a new trial.  *Id.*; Supporting Mem. (Dkt.

No. 2) at 10-17.

a)   Clearly Established Supreme Court Precedent

In *Brady*, the Supreme Court held "that the suppression by the

prosecution of evidence favorable to an accused upon request violates

due process where the evidence is material either to guilt or to

punishment, irrespective of the good faith or bad faith of the prosecution."

*Brady*, 373 U.S. at 87, 83 S.Ct. 1194, 1196-97.  To prove a *Brady*

violation, a habeas petitioner must establish that 1) the evidence at issue

was favorable to the accused either because it was exculpatory or could

have impeached a prosecution witness; 2) the evidence was suppressed

by the prosecution either willfully or inadvertently; and 3) prejudice ensued

from the withholding.  *Moore v. Illinois*, 408 U.S. 786, 794-95, 92 S.Ct.

2562, 2568 (1972); *see also Strickler v. Greene*, 527 U.S. 263, 281-82,

23

119 S.Ct. 1936, 1948 (1999).

> b)   Contrary to, or Unreasonable Application of, Supreme
>       Court Precedent

On October 7, 1996, Williams filed with the county court a post trial motion to vacate the judgment of conviction pursuant to CPL § 440.10. *See* Record at SR1399-1403 ("October, 1996 CPL Motion").  In that application, petitioner's counsel argued that the prosecution's failure to inform defense counsel that an indictment had been returned against Harris constituted a *Brady* violation.  *See* Record at SR1400-03, 1537-38. The trial court rejected that argument and denied Williams' application, however, reasoning that because the People had never timely announced that they were ready to proceed to trial on the indictment in which Harris was a named defendant, that accusatory instrument was subject to dismissal.[12]  Record at SR1543-44.  That court also noted that when cross examining Harris at Williams' trial, the defense had "ma[d]e use of the facts which ... served as the basis of the Grand Jury's sealed indictment against Jimmy Harris," and also "successfully inferred that Jimmy Harris was not to be believed because he was placing the blame

---

[12]    That finding was based upon CPL §§ 30.20 and 30.30, which govern a criminal defendant's right to a speedy trial in New York.

24

on others to protect himself."  Record at SR1544-45.

Appellate counsel subsequently renewed Williams' *Brady* claim on direct appeal.  *See* App. Br. at 22-34.  In rejecting this appellate claim, the Appellate Division concluded that there was "no basis to disturb County Court's determination" that Williams failed to establish a reasonable probability the result of his trial would have been different had the existence of the indictment been disclosed.  *Fells*, 279 A.D.2d at 710, 718 N.Y.S.2d at 462.  Since the rule announced in *Brady* is clearly established for AEDPA purposes, *see Clark v. Portuondo*, No. 00-CIV.-2491, 2002 WL 31553502, at *5 (S.D.N.Y. Nov. 13, 2002); *Huber v. Schriver*, 140 F. Supp.2d 265, 274 (E.D.N.Y. 2001), I must determine whether the state courts' denial of Williams' *Brady* claim is contrary to, or involved an unreasonable application of, *Brady* and its progeny.

In addressing the first prong of the *Brady* test, the court is somewhat handicapped by not knowing the precise use which, Williams contends, his attorney would have made at trial of the fact of the indictment against Harris had it been timely disclosed by the prosecution. In his supporting memorandum, petitioner argues that awareness of the indictment would have allowed his counsel to dispel the prosecution's

25

contention that Harris was not a participant in the criminal activity at his

residence on the date in question.  *See* Supporting Mem. (Dkt. No. 2) at

13.  This argument overlooks the well settled precedent in New York

prohibiting inquiry into whether a witness has been named as a defendant

in an indictment, based upon the New York Court of Appeals observation

that

> [i]t is well settled in this state ...  that a witness
> may not be impeached or discredited by showing
> on his cross-examination or in any other way that
> he has been indicted.  An indictment is a mere
> accusation and raises no presumption of guilt.  It is
> purely hearsay, for it is the conclusion or opinion of
> a body of men based on ex parte evidence.  The
> rule applies to criminal actions as well as civil, and
> to all witnesses whether parties or not.  As was
> said in a case decided as early as 1829: "The
> credibility of a witness is not to be impeached by
> proof of a particular offence, but by evidence of
> general bad character. If it was not competent to
> prove that the witness had perpetrated the
> offences for which he had been indicted, (of which
> there could be no question), it follows, of
> necessity, that the fact of his having been indicted
> was inadmissible evidence.

*People v. Morrison*, 195 N.Y. 116,117-18,  88 N.E. 21, 21-22 (1909)

(citation omitted); *see also People v. Gottlieb*, 130 A.D.2d 202, 207, 132

A.D.2d 498, 517 N.Y.S.2d 978, 982 (1st Dept. 1987) ("'[a] witness cannot

be asked whether he had been arrested or indicted, for an arrest or

indictment is a mere accusation of guilt'") (citations omitted).  Accordingly, to the extent petitioner is arguing that the fact of the indictment could have been used to impeach Harris, this argument is misplaced.[13]

It appears from his papers, petitioner may also be arguing that the fact of a returned, though unprosecuted, indictment would have been admitted into evidence at trial in support of his apparent theory that it provided Harris with incentive to testify in a manner favorable to the prosecution.  *See* Supporting Mem. (Dkt. No. 2) at 15-16.  This argument, however, overlooks the trial court's finding that at the time of his testimony, Harris was unaware of the return of a sealed indictment against him.[14,15]  Record at SR 1542.  It is clear, moreover, that for purposes of the third element of the *Brady* test, petitioner cannot establish

---

[13]     Although, petitioner's counsel was unable to question Harris concerning the existence of an indictment against him, he was given free reign to, and in fact did, question Harris extensively regarding the circumstances underlying that indictment including his role in the drug dealings at his residence.  *See* Record at SR 1079-81, 1085-91; *see also* Record at SR 1544-45.

[14]     In federal habeas actions, determination of factual issues made by a state court "shall be presumed to be correct," and a petitioner is required to rebut this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Mask v. McGinnis*, 233 F.3d 132, 139 (2d Cir. 2000).

[15]     Petitioner was specifically offered the option of an evidentiary hearing for purposes of determining, *inter alia*, whether, at the time of his testimony, Harris was aware of the pending indictment against him.  *See* Record at SR 1539, 1541-42.  That offer was declined.  *See id.*

prejudice from the asserted *Brady* violation.  In its decision addressing

this issue, the trial court specifically found that the indictment returned

against Harris was subject to dismissal based upon the prosecution's

failure to afford him his statutorily and constitutionally guaranteed rights to

a speedy trial, and the indictment would therefore have been dismissed

prior to Harris' testimony, making it "inappropriate" to question him about

the indictment and, more significantly, removing the incentive which it

allegedly presented to Harris to give fabricated testimony favorable to the

prosecution.  *See* Record at SR 1343-44.

Based upon the foregoing, I conclude that the Appellate Division's

decision denying Williams' *Brady* claim, *see Fells*, 279 A.D.2d at 710, 718

N.Y.S.2d at 462, is neither contrary to, nor represents an unreasonable

application of, *Brady* and its progeny.  I therefore recommend that

petitioner's third ground for relief be denied.[16]

### 4.   Ground Four

In the fourth ground of his petition, Williams argues that his trial

attorney rendered ineffective assistance by failing to request an

---

[16]   It is clear that petitioner is able to meet the second part of the *Brady* test, there being no dispute that the defense was not made aware of the existence of the indictment against Harris prior to the jury's return of its verdict.  *See* Resp. Mem. (Dkt. No. 30) at 9.

accomplice charge relating to Harris.  Amended Petition (Dkt. No. 27)

Ground Four.  Williams contends that "[t]he record fully supports [Harris']

complicity as a matter of fact and law," and that his trial counsel's failure

to request that charge constituted ineffective assistance.  *Id.*

a)   <u>Clearly Established Supreme Court Precedent</u>

The Sixth Amendment to the United States Constitution provides

that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to

have the Assistance of Counsel for his defense."  U.S. Const., amend. VI.

To establish a violation of this right to the effective assistance of counsel,

a habeas petitioner must typically show both:  a) that counsel's

representation fell below an objective standard of reasonableness,

measured in the light of the prevailing professional norms; and b)

resulting prejudice that is, a reasonable probability that, but for counsel's

unprofessional performance, the outcome of the proceeding would have

been different.  *Strickland v. Washington*, 466 U.S. 668, 688-90, 104

S.Ct. 2052, 2059 (1984); *Wiggins v. Smith*, 539 U.S. 510, 521, 123 S.Ct.

2527, 2535 (2003) ("the legal principles that govern claims of ineffective

assistance of counsel" were established by the Supreme Court in

*Strickland*).

29

Petitioner's ineffective assistance argument was raised in the direct appeal of his conviction and was rejected by the Third Department, which found that he

> received 'meaningful representation'. . . from his attorney who made appropriate and comprehensive pretrial motions, conducted pretrial hearings and examination of witnesses at the trial, made timely and appropriate objections and attacks on the People's proof.

*Fells,* 279 A.D.2d at 711, 718 N.Y.S.2d at 463.  Since "the rule set forth in *Strickland* qualifies as "clearly established Federal law[,]" *see Williams v. Taylor*, 529 U.S. at 391, 120 S.Ct. at 1512, I must determine whether the Third Department's denial of Williams' ineffective assistance claim (*Fells*, 279 A.D.2d at 711, 718 N.Y.S.2d at 463) is either contrary to, or an unreasonable application of, *Strickland* and its progeny.

      b)   <u>Contrary to, or Unreasonable Application of, Supreme Court Precedent</u>

In addition to basing his ineffective assistance argument on the failure to request an accomplice charge, in his direct appeal, Williams argued that the trial court erred in not providing such a charge, *sua sponte.  See* App. Br. at 34-40.  The Appellate Division concluded that because the record did not contain "undisputed evidence" which

30

established that Harris was an accomplice of the petitioner, the trial

court's failure to provide an accomplice charge as to Harris did not require

reversal of petitioner's conviction.  *Fells*, 279 A.D.2d at 711, 718 N.Y.S.2d

at 463.  In denying Williams' ineffective assistance claim, which was

based solely on his contention that trial counsel rendered ineffective

assistance by failing to request an accomplice charge, the Third

Department found the claim to be without merit because Harris was not

an accomplice of Williams.  *Fells*, 279 A.D.2d at 711, 718 N.Y.S.2d at

463.

     In light of the Appellate Division's determination that Harris was not

petitioner's accomplice, Williams cannot establish that trial counsel's

conduct in refraining from requesting an accomplice charge regarding

Harris was objectively unreasonable.   Moreover, in light of the evidence

adduced at trial establishing Williams' guilt of the crimes charged

discussed above, defense counsel's failure to request an accomplice

charge, even assuming, *arguendo*, the appropriateness of such a charge,

did not prejudice Williams.  *E.g.*, *People v. Kingsbury*, 256 A.D.2d 916,

917, 683 N.Y.S.2d 600, 601 (3d Dept. 1998) (even where an accomplice

charge is required under New York law, the failure to so instruct a jury is

31

harmless error where the proof of defendant's guilt at trial is substantial)
(citation omitted).

I therefore conclude that petitioner has failed to establish that the
Third Department's denial of this aspect of his appeal is either contrary to,
or represents an unreasonable application of, *Strickland* and its progeny,
and accordingly recommend that his fourth ground for relief be denied.

### 5.   Ground Five

In his fifth and final ground for habeas relief, Williams claims that
the prosecution's knowing use of perjurious testimony "of their key
witness," coupled with the "overzealous tactics" of both the prosecution
and Officer Messere in the criminal matter below, deprived Williams of his
right to a fair trial.  Amended Petition (Dkt. No. 27) Ground Five.  In
response to this claim, respondent argues that petitioner failed to claim in
the state courts that a) Officer Messere committed perjury at petitioner's
trial, and b) Officer Messere and the prosecution employed "overzealous
tactics" in order to secure his conviction.  Resp. Mem. (Dkt. No. 30) at 13.
Respondent argues that petitioner's failure to exhaust these claims in the
state courts has resulted in a procedural bar to his now raising them in
this proceeding.  Resp. Mem. (Dkt. No. 30) at 13-16.

My review of the state court record below establishes that Williams did not claim either in his October, 1996 CPL Motion, on direct appeal of his conviction or in his October, 2003 CPL Motion that Officer Messere committed perjury at his trial, or that the officer and the prosecution engaged in "overzealous tactics" in prosecuting him.  *See* October, 1996 CPL Motion; App. Br.; October, 2003 CPL Motion.  Petitioner did claim, however, in his October, 2003 CPL Motion that Harris had committed perjury at his trial.  *See* CPL Affirmation ¶ 31.

It is unclear whether Williams' ambiguous reference in his amended habeas petition to the knowing use of perjured testimony from a "key witness" for the prosecution relates to Officer Messere or Harris, both of whom offered critical testimony against Williams at his trial.  The Second Circuit has clearly instructed federal district courts to construe *pro se* pleadings liberally and interpret them "to raise the strongest arguments that they suggest."  *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994); *see also Williams v. Kullman*, 722 F.2d 1048, 1050-51 (2d Cir. 1983); *Bido v. Miller*, No. 00 CV 8462, 2005 WL 1241898, at *1 (S.D.N.Y. May 24, 2005) (citations omitted).  Mindful of this directive, I therefore consider petitioner's fifth ground for relief broadly as one alleging that both Harris

and Officer Messere committed perjury at the underlying trial, in addition

to petitioner's claim that Officer Messere and the prosecutor employed

"overzealous tactics" in the criminal matter below.

        a)     <u>Claims Relating to Officer Messere and the Prosecution</u>

It is well settled that a federal district court "may not grant the

habeas petition of a state prisoner unless it appears that the applicant has

exhausted the remedies available in the courts of the State.'" *Shabazz v.

Artuz*, 336 F.3d 154,160 (2d Cir. 2003) (quoting *Aparicio v. Artuz*, 269

F.3d 78, 89 (2d Cir. 2001) (other citation omitted)); *see also Ellman v.

Davis*, 42 F.3d 144, 147 (2d Cir. 1994).  This is because "[s]tate courts,

like federal courts, are obliged to enforce federal law."  *Galdamez v.

Keane*, 394 F.3d 68, 72 (2d Cir.) (quoting *O'Sullivan v. Boerckel*, 526 U.S.

838, 844, 119 S.Ct. 1728, 1732 (1999)), *cert denied sub nom.*, *Galdamez

v. Fischer*, ___ U.S. ___, 125 S.Ct. 1996 (2005).  As the Supreme Court

noted in *O'Sullivan,* "[c]omity ... dictates that when a prisoner alleges that

his continued confinement for a state court conviction violates federal law,

the state courts should have the first opportunity to review this claim and

provide any necessary relief."  *O'Sullivan*, 526 U.S. at 844, 119 S.Ct. at

1732 (citations omitted); *see also Galdamez*, 394 F.3d at 72 (quoting

*O'Sullivan*).[17]  Moreover, the burden of demonstrating full exhaustion of available state remedies lies squarely with the petitioner.  *See Curry v. Burge*, No. 03 Civ. 0901, 2003 WL 21230625, at *1 (S.D.N.Y. May 22, 2003) (citation omitted); *Cruz v. Artuz*, No. 97-CV-2508, 2002 WL 1359386, at *8 (E.D.N.Y. June 24, 2002) (citations omitted); *Ruine v. Walsh*, No. 00 CIV. 3798, 2002 WL 1349713, at *2 (S.D.N.Y. June 19, 2002) (citation omitted).

This exhaustion requirement is satisfied if the federal habeas claim has been "fairly presented" to the state courts.  *See Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997) (quoting *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 512 (1971)).  A claim has been "fairly presented" where the state courts have been apprised of "both the factual and the legal premises of the claim [the petitioner] asserts in federal court." *Daye v. Attorney General of New York*, 696 F.2d 186, 191 (2d Cir. 1982) (en banc); *Morales v. Miller*, 41 F.Supp.2d 364, 374 (E.D.N.Y. 1999).  Thus, "the nature or presentation of the claim must have been likely to alert the

---

[17]     This exhaustion requirement "reduces friction between the state and federal court systems by avoiding the unseemliness of a federal district court's overturning a state court conviction without the state courts having had an opportunity to correct the constitutional violation in the first instance." *O'Sullivan* 526 U.S. at 845, 119 S.Ct. at 1732; *see also Galdamez*, 394 F.3d at 72 (citing *O'Sullivan*).

court to the claim's federal nature." *Daye*, 696 F.2d at 192; *Morales*, 41 F.Supp.2d at 374.

In an apparent effort to refute respondent's claim that Williams is procedurally barred from raising his claims concerning Officer Messere's allegedly perjurious trial testimony as well as the "overzealous" methods purportedly employed by that witness and the district attorney in prosecuting him, petitioner argues that he in fact did voice those claims in his October, 2003 CPL Motion. *See* Supplemental Traverse (Dkt. No. 32) at 1.  Even when those various state court challenges to his conviction are generously interpreted, however, it does not appear that petitioner gave notice in that filing, or indeed in any of his state court challenges to his conviction, that he was raising such a claim.  I therefore agree with respondent that Williams has failed to exhaust these aspects of his fifth ground for relief.

When claims asserted in a federal habeas petition have never been presented to a state court, a federal court may find that there is an absence of available state corrective process under § 2254(b) "if it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in the state forum would be futile." *Aparicio*, 269

36

F.3d at 90 (citing *Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir. 1997)); *see also Lurie v. Wittner*, 228 F.3d 113, 124 (2d Cir. 2000) (federal court may address merits of a habeas petition containing unexhausted claims where there is no further state proceeding for petitioner to pursue or where further pursuit would be futile), *cert. denied*, 532 U.S. 943, 121 S.Ct. 1404 (2001)).  I must therefore determine whether it would be futile for Williams to now present these newly-asserted theories to the state courts.

Williams is plainly foreclosed from filing another appeal with the Third Department in order to advance the above claims since a defendant is "entitled to one (and only one) appeal to the Appellate Division."  *See Aparicio*, 269 F.3d at 91.  Moreover, petitioner could not now properly raise these claims in a third Article 440 motion, since he could have raised these arguments in either his direct appeal or the CPL Motions he previously filed with the county court.[18]  *See Murray v. Schultz*, No. 05CIV.0472, 2005 WL 1523504, at *14 & n.32 (S.D.N.Y. June 29, 2005) (Peck, M.J.) (federal claims that could have been raised on direct appeal but were not must be deemed exhausted and procedurally barred from

---

[18]     Williams was plainly aware of any perjury committed by Officer Messere, as well as the "overzealous" tactics employed by that individual and/or the district attorney in prosecuting Williams, by the time petitioner's criminal trial had concluded.

37

federal habeas review); *Haymon v. New York*, 332 F.Supp.2d 550, 555

(W.D.N.Y. 2004) (same) (citing *Grey v. Hoke*, 933 F.2d 117, 120-21 (2d

Cir. 1991)); *Otero v. Eisenschmidt*, No. 01 CIV.2562, 2004 WL 2504382,

at *35 (S.D.N.Y. Nov. 8, 2004) (Peck, M.J.) (unexhausted claim that could

have been raised in prior CPL § 440.10 motion procedurally barred in

context of federal habeas petition) (citing *Hernandez v. Goord*, No.

02-CV-3807, 2003 WL 23199521 at *14 (E.D.N.Y. Nov. 12, 2003));

*Caicedo v. Garvin*, No. 95 CV 3896, 1999 WL 221648, at *2 (E.D.N.Y.

Apr. 9, 1999) (same).  These claims are therefore "deemed exhausted"

for purposes of petitioner's habeas application.  *See Spence v.

Superintendent, Great Meadow Correctional Facility*, 219 F.3d 162, 170

(2d Cir. 2000); *Senor v. Greiner*, No. 00-CV-5673, 2002 WL 31102612, at

*10 (E.D.N.Y. Sept. 18, 2002).

Although these claims are "deemed exhausted," they are also

procedurally barred.  *See Aparicio*, 269 F.3d at 90 (citing *Coleman v.

Thompson*, 501 U.S. 722, 735 n.1, 111 S. Ct. 2546, 2557 n.1 (1991));

*Bossett v. Walker*, 41 F.3d 825, 828-29 (2d Cir. 1994), *cert. denied*, 514

U.S. 1054, 115 S.Ct. 1436 (1995); *Senor*, 2002 WL 31102612, at *10.

Federal courts may only consider the substance of procedurally barred

claims where the petitioner can establish *both* cause for the procedural default and resulting prejudice, or alternatively, that a fundamental miscarriage of justice would occur absent federal court review.[19]  *Dixon*, 293 F.3d at 80-81 (citing *Coleman*); *St. Helen v. Senkowski*, 374 F.3d 181,184 (2d Cir. 2004) ("[i]n the case of procedural default (including where an unexhausted claim no longer can proceed in state court), [federal courts] may reach the merits of the claim 'only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent'") (quoting *Bousley v. United States*, 523 U.S. 614, 622, 118 S.Ct. 1604, 1611 (1998)) (other citations omitted); *see generally Murray v. Carrier*, 477 U.S. 478, 495-96, 106 S.Ct. 2639, 2649 (1986); *King v. Greiner*, 210 F.Supp.2d 177, 182 (E.D.N.Y. 2002) (court is precluded from considering unexhausted claims "unless petitioner can establish cause to excuse the default and prejudice, or actual innocence"); *Lora v. West*, No. 04Civ.1902, 2005 WL 372295, at *9 (S.D.N.Y. Feb. 17, 2005) (citations omitted); *Morales v. Sabourin*, No. 00 Civ. 8773, 2002 WL 32375006, at *11 (S.D.N.Y. Apr. 30, 2002).

---

[19]     A fundamental miscarriage of justice exists "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Dixon v. Miller*, 293 F.3d 74, 81 (2d Cir.), *cert. denied*, 537 U.S. 955 (2002).

To establish "cause," a petitioner must show that some objective external factor impeded his or her ability to raise the unexhausted claims in the state courts. *Coleman*, 501 U.S. at 753, 111 S.Ct. at 2556; *Restrepo v. Kelly*, 178 F.3d 634, 638 (2d Cir. 1999); *Doleo v. Reynolds*, No. 00 CIV.7927, 2002 WL 922260, at *3 (S.D.N.Y. May 7, 2002) ("[t]o show 'cause' for his failure to exhaust state remedies before bringing a habeas claim, petitioner must show that some objective factor external to the defense impeded his efforts to raise the claims in state court") (citing *McCleskey v. Zant*, 499 U.S. 467, 493, 111 S.Ct. 1454, 1470 (1991)). Examples of external factors include "interference by officials," ineffective assistance of counsel, or that "the factual or legal basis for a claim was not reasonably available" at trial or on direct appeal. *Murray*, 477 U.S. at 488, 106 S.Ct. at 2645; *United States v. Helmsley*, 985 F.2d 1202, 1206 (2d Cir. 1993); *Key v. Artuz*, No. 99-CV-161, 2002 WL 31102627, at *9 (E.D.N.Y. Sept. 16, 2002).

In this instance, Williams has failed to establish cause for his failure to exhaust the above claims. Although he appears to argue that counsel's failure to raise these issues in the October, 2003 CPL Motion filed on his behalf establishes cause for his default, *see* Supplemental

Traverse (Dkt. No. 32) at 3, petitioner has never asserted such a claim in

the state courts.  An unexhausted claim may not be used to establish

cause for the procedural default of an underlying claim.  *See Zelaya v.*

*Mantello*, 00CIV.0865, 2003 WL 22097510, at *5 (S.D.N.Y. Sept. 10,

2003); *Santiago v. McGinnis*, CIV.00-5870, 2002 WL 31946709, at *4

(E.D.N.Y. Oct. 21, 2002); *Carey v. Supt.*, 99-CV-0821, slip op. at 5

(N.D.N.Y. Sept. 29, 2003) (McAvoy, S.J.) (citing *Murray*).

Since Williams has not demonstrated any legally cognizable cause

for his failure to exhaust these claims, I need not decide whether he

suffered actual prejudice, since federal habeas relief is generally

unavailable as to procedurally defaulted claims unless both cause and

prejudice is demonstrated.  *Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir.

1985); *Miller v. Bennett*, No. 98-CV-0661, 2004 WL 1573874, at *10

(W.D.N.Y. May 22, 2004) ("[s]ince petitioner cannot show cause for his

procedural default, this court need not reach the question of whether he

can show prejudice") (citing *Stepney*); *Jones v. Barkley*, No.

9:99-CV-1344, 2004 WL 437468, at *9 (N.D.N.Y. Feb. 27, 2004) (Sharpe,

D.J.) (collecting cases).  Moreover, since petitioner has failed to

demonstrate that he is actually innocent of the crimes of which he stands

41

convicted, I recommend that these claims in his fifth ground for relief be denied as procedurally defaulted.

b)      Perjury Claim Regarding Harris

Unlike the situation presented with respect to Officer Messere, Williams clearly argued in his October, 2003 CPL Motion that the prosecution suborned perjurious testimony from Harris at petitioner's trial. *See* CPL Affirmation ¶ 31.  I therefore must determine whether the county court's denial of that application, *see* December, 2003 Order, is either contrary to, or represents an unreasonable application of, relevant Supreme Court precedent.

i)      Clearly Established Supreme Court Precedent

A conviction obtained by the knowing use of perjured testimony on the part of the prosecution "is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury."  *United States v. Agurs*, 427 U.S. 97, 103, 96 S.Ct. 2392, 2397 (1976).  Where the testimony is "in any way relevant to the case," the knowing use of perjurious testimony by the prosecution deprives a criminal defendant of his or her right to a fair trial. *Napue v. Illinois*, 360 U.S. 264, 269-70, 79 S.Ct. 1173, 1177 (1959)

42

(internal quotations and citation).

        ii)      <u>Contrary To, Or Unreasonable Application Of,<br>Supreme Court Precedent</u>

Williams failed to present evidence in the state court, and has not

established in this proceeding, that the District Attorney knowingly elicited

perjurious testimony from Harris.  To the contrary, in his CPL Motion,

Williams' counsel merely argued that because 1) Harris was never

arrested or criminally tried on the indictment returned against him, and 2)

Officer Messere was subsequently found guilty in a federal court of

narcotics-related offenses, "by implication [petitioner presented] proof of

... subornation of perjury of the witness Jimmy Harris."[20]  *See* CPL

Affirmation ¶ 31.

      Upon review of the matter, including his submissions, it is clear that

petitioner has submitted nothing short of pure surmise, in either the state

courts or the present matter, to establish his claim that Harris committed

perjury at the criminal trial below, and has therefore fallen far short of

establishing that the prosecution knowingly elicited perjurious testimony

---

      [20]     *See United States v. Hamilton et al.*, 334 F.3d 170 (2d Cir.), *cert. denied*, 540 U.S. 985, 124 S.Ct. 502 (2003).

from that witness at Williams' trial.[21]   Federal courts cannot grant habeas

relief based upon unsubstantiated conclusions, opinions or speculation.

*Wood v. Bartholomew*, 516 U.S. 1, 8, 116 S.Ct. 7, 11 (1995) (federal

courts may not grant "habeas relief on the basis of little more than

speculation with slight support"); *Jones v. O'Keefe*, No. 99 Civ.12279,

2000 WL 1290595, at *5 (S.D.N.Y. Sept. 12, 2000) (citations omitted);

*Osinoiki v. Riley*, CV-90-2097, 1990 WL 152540, at *3 (E.D.N.Y. Sept. 28,

1990) (denying petition for writ of habeas corpus, where, *inter alia*, two of

petitioner's bases for relief were based on "nothing more than rank

speculation"); *Franza v. Stinson*, 58 F.Supp.2d 124, 154 (S.D.N.Y. 1999).

Since Williams has not demonstrated that Harris committed perjury

at the criminal trial below, *a fortiori* he has failed to demonstrate that the

county court's December, 2003 Order denying Williams' October, 2003

---

[21]     Williams attempts to offer support for his procedurally barred claim
that Officer Messere committed perjury by claiming that his testimony was
inconsistent with the sworn statements of petitioner's co-defendant in the
indictment, who claimed during his plea allocution that the cocaine found on June
24, 1995 was located in a closet.  *See* Supplemental Mem. at 5-6.  Petitioner
argues that the sworn testimony of the co-defendant was inconsistent with Officer
Messere's testimony regarding the location of the drugs seized during the execution
of the search warrant.  *Id.*  That claim, however, in no way supports his allegation
that *Harris* committed perjury at Williams' trial.  Moreover, careful review of the plea
allocution of the co-defendant referenced by Williams in his supplemental
memorandum of law reveals that the statements made by that individual during his
plea were entirely consistent with Officer Messere's trial testimony.  *Compare*
Record at SR214-16 *with* Trial Tr. at 625-32.

CPL Motion asserting that claim is contrary to, or involves an unreasonable application of, the above-referenced Supreme Court precedent.  I therefore recommend that this final aspect of his fifth ground for relief be denied.

III.   <u>SUMMARY AND RECOMMENDATION</u>

The record before the court firmly establishes that Williams has never presented to the state courts his federal claim that Officer Messere committed perjury at petitioner's trial, or that Officer Messere and/or the prosecution utilized "overzealous tactics" to secure petitioner's conviction. Since petitioner has not shown cause for his procedural default relating to these claims or that he is actually innocent of either of the crimes of which he was convicted, I find that these aspects of Williams' fifth ground for relief are procedurally barred and accordingly recommend the denial of these claims on that basis.  Applying the required, deferential AEDPA standard to the remaining aspect of this ground as well as the other four claims raised by the petitioner in his amended habeas application, I find them to be without merit, and therefore recommend that all such claims be denied.  It is therefore hereby

ORDERED, that petitioner's request to expand the record in this

action (Dkt. No. 2) is DENIED, and it is further

RECOMMENDED, that Williams' habeas petition be DENIED and

DISMISSED in its entirety.

NOTICE:  pursuant to 28 U.S.C. § 636(b)(1), the parties have ten

(10) days within which to file written objections to the foregoing report-

recommendation.  Any objections shall be filed with the clerk of the court.

FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL

PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ.

P. 6(a), 6(e), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is further ORDERED that the Clerk of the Court serve a copy of

this report and recommendation upon the parties by regular mail.


Dated:      August 15, 2005
            Syracuse, NY

                                        David E. Peebles
                                        U.S. Magistrate Judge


G:\ISSUES\habeas corpus\02_0695_Williams.wpd